UNIVERSAL CARLOADING & DISTRIB-
UTING CO., Inc., v. RAILROAD RE-
TIREMENT BOARD et al.
Civil Action No. 32961.

District Court of the United States for the
District of Columbia.
April 29, 1947.

Harry C. Ames, of Washington, D. C., and Herbert J. Patrick, of Indianapolis, Ind., for petitioner.

Myles F. Gibbons and David B. Schreiber, both of Chicago, Ill., for Railroad Retirement Board.

Edward C. Kriz, of Washington, D. C., and Clarence M. Mulholland, of Toledo, Ohio, for Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees.

PINE, Justice.

This is an action for review of a decision of the Railroad Retirement Board. It arises out of an adjudication by that Board under the Railroad Unemployment Insurance Act.[1] Sections 5(c) and 5(f) of the Act authorized a judicial review, by this Court, of the Board's decision.[2] The Act establishes a system of unemployment insurance for employees of designated classes of employers. The Board has decided that

---

[1] 52 Stat. 1094, 45 U.S.C.A. § 351 et seq.

[2] 45 U.S.C.A. § 355(c) and (f). By amendment enacted after institution of this action, provision is made for review of the Board's decisions by the Circuit Courts of Appeal, instead of by the District Courts, Acts of July 31, 1946, § 314, Public Law 572, 45 U.S.C.A. § 355(f).

petitioner is and has been an employer within the meaning of the Act, and therefore subject to its provisions. That was the sole question before the Board. Its decision on that question is herein presented for review.

The Act defines an employer as "any company[3] which is directly or indirectly owned or controlled by one or more * * * carriers[4] or under common control therewith, and which operates any equipment or facility or performs any service * * * in connection with the transportation of * * * property by railroad, or the receipt, delivery * * * transfer in transit, * * * storage, or handling of property transported by railroad * * *".

This court, under the Act, may enter upon the pleadings and transcript of record a decree affirming, modifying, or reversing the decision of the Board, but no additional evidence may be received; and the "findings of the Board as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive."[5]

The transcript of the record upon which the findings and decision of the Board are based has been filed in this court. It consists of 1884 pages and contains 63 exhibits. The decision of the Board consumes 61 pages, the dissenting opinion 20 pages, the testimony taken before the examiner 861 pages, and his report 67 pages of the transcript. No question of fraud is raised.

█ So far as material to this case, the definition of "employer," as contained in the Act, resolves itself into two elements, the first of which is the meaning of the word "controlled." The Board has interpreted "control" to include the right or power to direct the policies and business of another. The Board's interpretation does not require that the right or power be exercised in order to constitute "control." The language of the Act is broad, and this inter-

pretation of the Board appears to be in keeping with the legislative purpose of the Act and in consonance with the trend of judicial expression in similar cases.[6] Moreover, the function of review reposed in the courts in an action of this kind is to determine that there has been "an application of the statute in a just and reasoned manner,"[7] or, as stated in a still more recent case, "Where the question is one of specific application of a broad statutory term in a proceeding in which the agency administering the statute must determine it initially, the reviewing court's function is limited," and "the Board's determination that specified persons are 'employees' under this Act [National Labor Relations Act, 29 U.S.C.A. § 151 et seq.] is to be accepted if it has 'warrant in the record' and a reasonable basis in law."[8] The interpretation of the Board in the instant case meets these requirements.

Turning to the facts relevant to this element of "control," the Board's findings disclose, among others, that the New York Central Railroad Co., a "carrier" within the meaning of the Act, had the right or power to direct the policies and business of petitioner during the entire period in question, if power be considered in a practical, realistic, and experienced sense. Among the voluminous facts found by the Board, it is necessary only to give a brief summary of a few of them in order to demonstrate the correctness of this conclusion.

█ The entire capital stock of petitioner has at all times been owned by the United States Freight Co., a holding company. Through the medium of various corporate devices and agreements, the New York Central has been the undisputed beneficial owner of 54% of the total outstanding stock of the United States Freight from 1932 to about 1937, and of 49% of such stock from about 1937 to the date of the Board's decision herein. This stock was

3 Petitioner is "company" under the Act, 45 U.S.C.A. § 351.

4 Carrier by railroad, subject to Part I of the Interstate Commerce Act, 49 U.S.C.A. Chapter 1.

5 45 U.S.C.A. § 355(f).

6 Rochester Telephone Corp. v. United States, 307 U.S. 125, 59 S.Ct. 754, 83 L. Ed. 1147; Public Service Corp. of New Jersey v. Securities and Exchange Commission, 3 Cir., 129 F.2d 899, certiorari denied, 317 U.S. 691, 63 S.Ct. 266, 87 L. Ed. 553.

7 Gray v. Powell, 314 U.S. 402, 62 S.Ct. 326, 332, 86 L.Ed. 301.

8 National Labor Relations Board v. Hearst Publications, 322 U.S. 111, 131, 64 S.Ct. 851, 860, 88 L.Ed. 1170.

acquired with the funds of the New York Central. The remaining stock of the United States Freight has been distributed among many stockholders, no one of whom has owned more than about one percent. At each annual meeting of the stockholders of the United States Freight since 1932, the stock beneficially owned by the New York Central has represented a majority of the votes cast. These facts found by the Board are "supported by the evidence."

The evidence thus supporting the facts, and such facts disclosing control under the interpretation of the Board, and such interpretation having "a reasonable basis in law," no. more need be said on the question of control, were it not for petitioner's insistence that the creation of a trusteeship in 1939, in Balthasar H. Meyer, withdrew from the New York Central the control of this stock. This relationship was established after a decision by the Interstate Commerce Commission in the Freight Forwarders Investigation, 299 I.C.C. 201, in which the Commission found that New York Central, through stock ownership and working relations, controlled petitioner "so as to constitute the latter an agency or instrumentality of the New York Central for the consolidation of less-than-carload shipments into carloads." Apparently in an effort to avoid the consequences of this decision, Mr. Meyer was made a trustee of this stock with power to vote it free of control or suggestion by the corporations which were the creatures of the New York Central and which had been interposed between the Freight Company and the New York Central in the ownership of the stock. The New York Central, however, remained the beneficial owner of the stock, was both the creator and sole beneficiary of the trust, and from a practical standpoint at least, could terminate it at will, with express sanction for its termination after the enactment of the Freight Forwarders Act on May 16, 1942, 49 U.S.C.A. § 1011(g), permitting a railroad to control a freight forwarder. Inasmuch as the Court is not permitted to weigh the evidence in this proceeding or draw its own inferences therefrom,[9] the existence of this trust would not be sufficient to overcome the Board's finding, even though there were a disposition, which does not exist, to allow legal formalism to obscure reality. The Board's decision that New York Central "controlled" petitioner therefore will be sustained.

The second element of the definition of employer is the meaning of the expression, "service * * * in connection with the transportation of * * * property by railroad, or the receipt, delivery, * * * transfer in transit, * * * storage, or handling of property transported by railroad * * *."

In Railroad Retirement Board v. Duquesne Warehouse Co., 326 U.S. 446, 453, 454, 66 S.Ct. 238, 241, the Supreme Court held that, "at the very least the phrases in question embrace activities which form a part of transportation service within the meaning of the Interstate Commerce Act," and "which would be transportation services when performed by a railroad but which it chooses to have performed by its affiliate."

Section 1(3)[10] of the Interstate Commerce Act, in defining "transportation," includes services in connection with the "receipt," "delivery," "transfer in transit," "storage," and "handling" of property transported. This language is identical with the language used in the Railroad Unemployment Insurance Act.

Briefly stated, the Board found that petitioner was fundamentally a transportation agency engaged in the handling of railroad less-than-carload freight; that its operations were primarily directed toward the consolidation of less-than-carload merchandise entrusted to it by the public into carloads for transportation in line-haul movement by railroads and the concentration of such movements over direct and economical rail routes; that where such rail movement is impracticable or uneconomical, petitioner utilizes truck transportation, for the most part in coordination with rail movements; and that in so doing it receives, stores, handles, and delivers less-than-carload merchandise transported by rail, loads and unloads the same into and

---

9 National Labor Relations Board v. Nevada Corp., 316 U.S. 105, 62 S.Ct. 960, 86 L.Ed. 1305.

10 49 U.S.C.A. § 1(3).

from railroad cars, and transfers them in transit from car to car at break-bulk points. These findings of the Board are supported by the evidence, and they clearly disclose that petitioner comes within the second element of the definition of "employer."

In view of the foregoing, the decision of the respondent will be affirmed. Counsel will submit, on notice, appropriate judgment carrying this opinion into effect.